ALBANY,
January, 1817.

GRAVES
v.
DELAPLAINE.

---

GRAVES AND OTHERS, *trustees, &c. of* WORRALL AND WILLIAMSON, *absent debtors, against* DELAPLAINE.

Where A., a merchant in *Great Britain,* by his agent, charters a vessel of B., a merchant in *New-York,* during the continuance of the non intercourse law of the *United States,* for the purpose of transporting goods from *New-York* to *Fayal,* there to be transferred to another vessel to be conveyed to *England,* A. can maintain no action against B. for any balance of accounts due to him upon this transaction. the whole being illegal and void.

THIS was an action of *assumpsit* brought by the plaintiffs, trustees under the absent and absconding debtor act, for the creditors of *Worrall* and *Williamson,* merchants, in *Liverpool,* in the kingdom of *Great Britain,* to recover from the defendant a balance of account alleged to be due from him to *Worrall* and *Williamson.* The defendant pleaded *non assumpsit,* with notice of set-off. The cause was tried before his honour the Chief Justice, at the *New York* sittings, in *April,* 1816.

The agent of *Worrall* and *Williamson,* on the 17th of *November,* 1809, chartered of the defendant, at *New-York,* the ship *Columbia,* for a voyage from *New-York* to Fayal, at certain stipulated rates of freight. The charter-party contained the following provisions :—" The ship is to be got in readiness

A person who has become a bankrupt, and been discharged in *Great Britain,* and against whose property in this state an attachment has issued. under the absent and absconding debtor act, cannot be a witness in favour of his trustees under that act, although he has released his interest in the surplus of his estate to his assignees in *Great Britain,* and to his trustees here.

for sea without any delay, and by the 23d instant, if possible. On her arrival at *Fayal*, if the vessel in which the cargo is intended to be re-shipped should not be there, the vessel is to re main with the cargo on board (if the laws and regulations of the island of *Fayal* will permit it) for 30 days, after which it shall be discharged without the least delay; or should the captain deem proper to lay longer than the 30 days, and the agent or consignee of the cargo at *Fayal*, assent to it, 40 dollars per day is to be allowed for demurrage, for each and every day the ship shall be so detained by consent of the master. It is understood, if the *Columbia's* cargo is discharged immediately on her arrival at *Fayal*, no allowance is to be made for the whole or any part of the 30 days, above stated, by the owner. It is also understood, that the freight will be placed by *Worrall* and *Williamson*, of *Liverpool*, to the credit of *John F. Delaplaine*, on learning of the arrival of the *Columbia* at *Fayal*, and that he is hereby authorized to draw on them for two-thirds of said freight, he giving *Worrall* and *Williamson* orders to effect insurance on the *Columbia's* freight from *New-York* to *Fayal*. *John F. Delaplaine* agrees to ship in her a quantity of goods, if I think proper, equal to 400 barrels, to be heavy freight." The defendant shipped on board of the *Columbia* two hundred tierces of flaxseed on his own account. After her arrival at *Fayal*, and a considerable delay in waiting for the arrival of a vessel from *England*, the defendant's flaxseed, as well as the residue of the cargo, was put on board of a vessel which came from *England* for the purpose of taking it, and by which it appears to have been conveyed to *England*. It appeared that the cargo was shipped at *New-York*, with the express view of being sent to *England* by the way of *Fayal*. The defendant was charged in the account current of *Worrall* and *Williamson*, among other things, with the amount of bills drawn on and accepted by them, on account of the freight of the *Columbia*, and was credited with the nett proceeds of the freight of his shipment of flaxseed.

The plaintiffs offered to read in evidence the deposition of *W. Jones*, jun. taken under a commission; and the defendant's counsel objected, on the ground that the bills of exchange mentioned in the debit side of the account current annexed to his deposition, and the payment of which the deponent's deposition was intended to establish, ought first to be produced and proved; but the Chief Justice allowed the deposition to be read, subject

ALBANY,
January, 1817

GRAVES
v.
DELAPLAINE

to all objections. The witness stated that he was, by occupation, a book-keeper, and that his knowledge of the payment in the debit side of the account was by means of his being the clerk of *W*. and *W*. in their counting house, at the time, in Liverpool, being *chiefly* employed in keeping their books.

The *items* in the *debit* side were for two bills of exchange accepted and paid by *W*. and *W*. and 98*l*. 3*s*. 4*d*. paid to Captain *Hazard* for primage and cabin freight. The defendant objected, that the bills of exchange ought to be produced and proved; that he had, previous to the trial, given notice to the attorney of the plaintiff to produce them; but the Chief Justice overruled the objection. To show that the bills had been paid by the order or on account of the defendant, the plaintiffs offered the depositions of *Worral* and *Williamsom*, taken under a commission.

It appeared that commissions of bankrupt had issued against *Worral* and *Williamson*, in *England*, and that they had obtained their certificates of conformity; and that previous to their testimony being taken, they had released to the assignees of their estate, in *Great Britain*, and to the plaintiffs, their interest in the surplus of dividends of their estate in *Great Britain*, and in the state of *New York*, respectively. The depositions were objected to on the ground, that the *English* certificates did not exonerate the witnesses from their debts here, and that their evidence went to create a fund for such exoneration; and on this ground they were excluded by the Chief Justice.

The plaintiffs then read in evidence the affidavit of the defendant, made by him for the purpose of resisting the motion made in this court, in *May* term, 1814, for the commission under which the deposition of *W*. & *W*. was taken. In this affidavit the defendant stated, that he was a native of and resident in the city of *New-York*, and in *November*, 1809, contracted with the agent (*De Jough*) of *W*. & *W*. to let to freight a vessel, *Hazard* master, for a voyage to *Fayal*. and to ship on board a part of the cargo to be consigned to *W*. & *W*., and it was agreed that certain bills of exchange on *W*. & *W*. should be accepted and paid by them on account of such freight and consignment; and that the demands of the parties in this suit arose entirely out of the aforementioned contract and arrangement; and that the plaintiffs, in their right as trustees, produced a claim against him on account of the bill above mentioned, the payment thereof, and some charges in respect to the business.

ALBANY,
January 1817.

GRAVES
v.
DELAPLAINE.

The plaintiffs also proved, by their attorney, that before the commencement of the suit, he furnished the defendant's attorney with an account current similar to the one annexed to the deposition of *Jones.*

The defendant then claimed under his notice of set off, and read in evidence the agreement of charter party, for the ship *Columbia,* dated 17th of *November,* 1809, not under seal, and signed by *J. D. Jough,* and the defendant; and it being objected that *W. & W.* were not parties to this instrument, and that it did not appear to have been made in their behalf, or by virtue of any authority derived from them, the defendant, to show that fact, produced and read in evidence a letter of *W. & W.,* addressed to them, dated 2d of *January,* 1810, in which they say, " Your esteemed favour of the 25th of *November* last, has been duly handed us by our agent, and it is with particular pleasure we perceive his having arranged with you for the charter of the *Columbia, Hazard,* from *New-York* to *Fayal.* We thank you for permitting the freight to pass through our hands, and we beg you to be assured that your valuation, as stated, will receive prompt protection whenever they appear."

The defendant proved the shipment of the goods, the amount of freight according to the charter party, and the demurrage at *Fayal,* and the price of flax-seed in *Liverpool,* at the time of its arrival there, &c.

The counsel for the plaintiffs objected, that as it was in evidence that the set off arose under a transaction in breach of the non-intercourse law, which was in force at the time when the shipment was made, no part of it could be allowed. The counsel for the defendant then urged, that as *Worral* and *Williamson* were parties, through their agent, to the same transaction, the claim of the plaintiffs, being in their right, was not maintainable, and the Chief Justice ruled accordingly. A verdict was taken, by consent, for the plaintiffs, for the balance stated in the account current of *Worral* and *Williamson,* with interest, subject to the opinion of the court on a case containing the facts above stated.

*Caines,* for the plaintiffs. That the plaintiffs were duly authorized to sue, being a conceded point on the part of the defendants, he should proceed, (2dly,) to show that their demand, as stated in the account current, was proved; and this second point, he contended, was supported on two grounds: 1st. That the judge, at the trial, was not correct in not requiring the pro-

duction of the bill of exchange in this action, which was not to recover the amount paid on them by the acceptors; and, 2dly. Because the payment of them being proved from the evidence in the case, their existence, and the order to pay, in behalf of the defendant, was necessarily included in the proof.

As to the production of the bills, he said, the instrument itself was never required to be adduced, unless, (1.) when it was the foundation of the action, that is, declared upon; (2.) when it was in the hands or power of the plaintiff; (3.) when in the hands of the defendant, and could be called for; or (4.) when in the hands of some third person who might, by compulsory process of the court, as a *subpœna duces tecum*, be obliged to produce it. None of those principles applied in this case. The bills must have passed to the assignees of the acceptors in *England*, under the commission of bankrupt sued out against them there. They could not be in the hands of the plaintiffs, whose suit was in hostility to the assignees of *Worral* and *Williamson*, as it sought to obtain a portion of the estate of *W. & W.* to distribute among the creditors here, in opposition to the distribution sought to be made under the *English* commission. Nor could the bills be supposed to be in the hands of the defendants, since they had passed from him in a course of exchange; nor could a *subpœna* go to the assignees in *England*.

In the present suit, the action was not on the bills, but for the recovery of the money paid on them. The payment was a fact collateral to the bills, and might be proved *aliunde*. This, he said, was the rule in all cases of collateral facts, as payment of rent, for which a receipt had been given, without producing the receipt;* of the payment of a bill by the admissions of the plaintiff,† of a bond, by parol, though an attested receipt was endorsed on it.‡ Had the action been on the bill the payment might have been proved without it,§ as all other facts when collateral, though to establish the contents of the bill.‖ The bills themselves, if produced with receipts endorsed on them, would have been no more than *prima facie* evidence, and further evidence might have been required.**

As to the payment of the bills, that, he said, was established by the statement of the defendant set forth in the case, showing their existence, and the order of the defendant to pay them. This was also substantiated by the deposition of the witness, *Jones*, in his answer to the fifth interrogatory, unless the words "and chiefly" were read, because entirely,

* *Runn. on Eject.* 289.
† 1 *East.* 460.
‡ 6 *Binney's Rep.* 16.
§ 1 *Ld. Raym.* 742.
‖ 2 *Campb. N. P. Rep.* 601. 3 *Campb. N. P.* 310.
** *Peake's Rep.* 21.

3. That the testimony of *Worrall* and *Williamson* was improperly rejected. Their evidence was admissible, 1st. Because they had no interest in the subject matter of the suit: 2d. Because their testimony could not create a fund, in exoneration of themselves, and, 3d. They were under no liabilities. They have released all their interest, both to the assignees in *England,* and to the trustees under the attachment. It was a demand arising from a credit they had afforded ; this credit was the origin of the demand, and preceded the debt ; and it must arise where the credit was given, in *England.** As the debt of the drawer of the bill arises where the bill was drawn,† so the acceptor's demand arises where the acceptance was given. The acceptance is an engagement collateral to the bill ; the acceptor becoming liable only by the acceptance, whereas the drawer's engagement is on the bill, and the debt of the drawer to the payee, endorsee, &c. arises where the bill is drawn, by his drawing. When the acceptance, as in this case, is made without funds, the liability of the drawer, or his debt to the acceptor arises only on payment, and that must be where the acceptance is given and discharged. If the acceptance be on funds in the hands of the drawee, then it is a debt due from the acceptor, before the acceptance, in the place where it is given. In either case, the acceptance is collateral to, and not on, the bill. In the present case, the demand arose on payment of the acceptance and, therefore, in *England.* If so, the debt passed to the *English* assignees of *W.* & *W.,* as regulated by their domicil,‡ subject, however, as a species of property, to attachment by creditors of the bankrupt in the hands of such of their debtors as might be in the country where the attachment was laid, to prevent the transit of the debt to the *English* assignees.§ By this principle, the debtor was in no danger of paying the same debt twice, because payment under such attachment being by coercion of law, is a discharge to the debtor of the bankrupt against his assignees, whether the attachment be before the commission sued out,‖ as in the present case, or after.** Again ; their testimony was admissible, because they were under no personal liabilities in this country. They were, as stated in the case, *commission,* not importing merchants, resident in *England,* and had never been in this country. The presumption, therefore, was that all their debts arose in *England,* from whatever place the goods consigned to them might come. The debts of commission merchants to the consignors or con-

* *Huxhan* v. *Smith* 2 *Campb. N P. Rep.* 21

†*Hicks* v. *Brown,* 12 *Johns. Rep.* 142.

‡ *Sill* v. *Worsmick,* 1 *H Bl.* 690. *Philips* v. *Hunster,* 2 *H. Bl.* 402.

§ Per Lord *Loughborough,* 2 *Hen. Bl.* 412.

‖ *Chevalier* v. *Lynch, Doug.* 170.

** *Milne* v *Morton,* 6 *Binney,* 353.

ALBANY,
January 1817.

GRAVES
v.
DELAPLAINE

* *Ferris* v. *Paris,*
10 *Johns. Rep.*
285.
† *Topham* v.
*Braddick,* 1
*Taunt. Rep.* 572.

signees arise where the goods are sold, and then not until after a demand.* And, therefore, against a debt due by a commission merchant, the statute of limitations does not begin to run until after a demand.† There did not appear to be any debts due. from them which arose in this country; it must be presumed, therefore, that no such debt existed.

The attachment, and proceedings under it, do not afford even presumptive evidence against this reasoning. An attachment is not *prima facie* evidence of a debt arising in the place where the attachment issues. For the purposes of an attachment, a debt due to an absent debtor is considered merely as a species of property travelling with the debtor, and, therefore, liable, as an incident, for the sake of the remedy, in the country where the principal, the debtor of the absent debtor, resides. An attachment, by operation of law, gives corporeality to an incorporeality, and thus, for the purpose of a kind of preferential justice, to prevent foreigners from drawing from this country, in satisfaction of their demands, debts liable to the claims of our own citizens. Such debts are, by operation of law, stopped in *transitu.* But this is no evidence of the origin of the debt due by the absent debtor. It is only evidence that the debt attached

‡ *Cook* v. *Lozaine,* 1 Lord
*Raym* 347.

§ 2 *Campb. Rep.*
21
‖ *Myers* v. *Urich,*
1 *Binney's Rep.*
25.

is passing through the country where the attachment is laid.‡ An attachment, and a judgment on it, is not *prima facie* evidence that the debt arose there;§ nor even that there is any debt existing which was liable to the attachment.‖ The facts in the case standing unrebutted, warrants the presumption that all the debts of *W. & W.* arose in *England.* Their certificate, therefore,

** 1 *East,* 6
5 *East,* 124   12
*Johns. Rep.* 142.

is a complete discharge in foreign countries;** and if so, they had no interest in creating a fund to exonerate themselves from a liability, which the facts, and the law of the case showed did not, and could not exist.

Then, as to the defence, by way of set-off, 1st. Under the charter-party. 2d. For money had and received. The charter-party is *res inter alios acta.* It is in the name of *De Jough* alone. It is not even stated that he was the agent of *W. & W.;* and if he were so, or had named himself as agent, he alone would

†† *Mauri* v. *Heffernan,* 13 *Johns*
*Rep* 58    *Stockpole* v. *Arnold,*
11 *Mass. Rep* 27.
*Arfridson* v.
*Ludd,* 12 *Mass.*
*Rep* 173. *Appleton* v *Binks,* 15
*East,* 148.

be liable, it being executed in his own name.†† The letter of *W. & W.* did not adopt the charter-party. The styling him agent was a mere *descriptio personæ;* they thank the defendant for letting the freight of the *Columbia* pass through their hands; had the debt on the charter-party been theirs, they would not

so have expressed themselves. Where a contract is explicit in itself, it cannot, by parol evidence, or by connecting it with a letter not expressly referring to it, be varied or extended.* Besides, the charter-party was an illegal contract, and an express adoption of it is necessary to charge a third person as a party. Fraud is not to be presumed.† So strict is the law in this respect, that rather than suppose fraud, it will invert its rules; and where the omission of an act renders a transaction fraudulent, it will oblige the party alleging it to prove a negative ;‡ *a fortiori,* ought he to prove the affirmative.

There was no evidence to support a set-off for money had and received. *W.* and *W.* were commission merchants, or factors, selling on account of their principals, and it was attempted to charge them for money had and received, by showing what similar goods sold for. This cannot be done, unless an account of sales is denied,§ or an account only of a part is rendered, and for the residue is refused.‖

The account current, a copy of which had been delivered to the defendant's attorney, according to *Garr's* evidence, states the credits according to the account rendered. Copies of these accounts of sales were annexed to the deposition of *Jones,* and not admitted, because not proved ; but they were not offered to prove any of the items, but merely to show that they had been rendered, that the defendant might surcharge and falsify. To let in the evidence sought for, a delivery to *W.* and *W.* that is, a receipt by them, ought to have been shown ; and there was no evidence that the flaxseed came to hand, unless from the credit given for it.

There was another reason why the set-off could not be admitted. It arose out of an illegal act of the defendant, which did not affect the demand of *W & W.,* for they were not in *pari delicto ;* and because it was not the same transaction. The *delictum* of the defendant was in shipping merchandize in contravention of the non-intercourse laws, to which he owed obedience; but *W. & W.* being *aliens,* resident abroad, owed no allegiance to this country. They could not, therefore, be in *delicto.* To implicate an alien in the offence against a municipal or revenue law, he must take an active part in breaking it ; for if his transactions were in the course of his business, though he knows the other deals with him, and intends to apply the subject matter of dealing in breach of the law, he is not affected by it, and may

*ALBANY, January, 1817.*

GRAVES
v
DELAPLAINE.
* Grant v. Naylor, 4 Cranch, 224.
† The King v. Manning, 2 Com. Rep 642.

‡ Williams v. East India Company, 5 East, 199.

§ Loughborough v. Kenny, Doug. 122.
‖ Schee v. Hassinger, 2 Binney, 325. Massinger v Kintner, 4 Binney, 97.

ALBANY,
January, 1817.

GRAVES
v.
DELAPLAINE.

\* Holman v.
Johnson   Cowp.
341. Houriet v.
Morris, 3 Campb.
N. P. Rep. 303.
† Hodgson v
Temple, 5 Taunt.
Rep. 181.
‡ 4 Term Rep.
466.
§ Clark v. Schee,
Loft's Rep. 759.
S. C Cowp 197.
‖ Dawes v. Pin-
dar, 2 Mod. 45.
Blanchard v.
Galdby, 4 Mod.
222.
\*\* United States
v. Wells, 3 Day's
Rep. 296.

recover on his part of the transaction.\* So, though the transaction be in his own country.†

But when the alien steps out of the line of his business, and aids by packing in an unusual manner, then, and not till then, is he *particeps criminis.*‡ In many cases the principal can recover when the agent or servant cannot.§ Even in colonies of a mother country, an agreement made in the colony, though contrary to the laws of the mother country, has been enforced in her tribunals ; as in the case of the sale of offices contrary to the statute of· *Edw.* 1.‖ The importation of a cargo, the proceeds of an unlawful cargo, has been ruled to be legal in a citizen ;\*\* *a fortiori* the advance on a cargo, made by a foreigner in his own country.

Again ; the demand and set-off are not the same transaction. The whole of the illegal set-off was a finished act in 1809, before the acceptances were in existence, for they were not given until *August,* 1810. The demand, therefore, is totally distinct, not arising on the shipment, but on a personal mercantile credit given to the defendant. The bills were not dependent for payment on the funds shipped. Had the goods been lost, and the underwriters failed, the defendant would have been liable for the amount of the acceptances lent him, as a personal credit afforded him. Advances made by a factor are on the joint credit of the fund and person of his principal.†† The means to which he resorted to redeem that credit, were independent of the debt created by it, and unconnected with it.

†† Burrill v.
Phillips, 1 Dal
lis' Rep. 360—
363., per Story,
J.

*Slosson* and *Wells*, contra. 1. The testimony of *W.* and *W.* was properly rejected, on the ground of interest, the discharge under the bankrupt laws of England not being a discharge from their creditors in this country ; and the assignment under the absent and absconding debtor act of this state, leaving them still liable, the recovery in this case would go to diminish their debts in this country. The evidence clearly shows, that the debt was contracted here. In *Van Raugh* v. *Van Arsdaln*,‡‡ this court decided, that a discharge under the insolvent act of another state was no bar to a·suit here, by a citizen of this state, for a debt contracted here, and where the creditor has not given his assent to the proceedings under such insolvent act. And from their liability here the discharge in England cannot exonerate them ; neither can any release by them to their assignees discharge this liability. They are as much benefited by creating

‡‡ 3 Caines' Rep.
154.

a fund, to pay their debts, as by creating a fund which is to go into their own pockets. It is not a case of a remote, contingent, or evanescent interest; but the interest is certain, direct, and palpable. Neither a bankrupt, nor the creditor of a bankrupt, is competent; for a person cannot be a witness to create or increase a fund in which he is to participate.[*] If W. and W. are rejected as witnesses, the plaintiff's right to recover must rest solely and exclusively on the evidence of Jones, who was examined under a commission. He refers to the account current; and every material part of his testimony is derived from the books of W. and W. in his capacity of book-keeper. There must be evidence of the existence of the bills, that they were drawn by the defendant, and were paid by the drawees; their genuineness and identity ought to have been shown; but there is no evidence whatever of the bills. [Here the counsel entered into a minute examination of the evidence.] To supply this defect in the evidence, W. and W. were offered as witnesses, and if they were properly rejected, the plaintiffs cannot recover.

2. This was an illegal contract, and both parties being in delicto, neither can recover against the other. If the illegality of the contract is a valid objection to the set-off of the defendant, it is equally so to the claim of the plaintiffs. The demands of both parties originated in the same agreement. The charter-party, shipment, and bills, are all one connected transaction, one entire contract. W. and W. are parties to this contract; they received the letter of the 25th November, 1809, from De Jough, their agent; and in their letter of the 2d January, 1810, they expressly recognise and adopt the acts of their agent. That this is one entire contract consisting of mutual stipulations, all originating from one agreement, is clearly and fully proved by the affidavit of Delaplaine, which was introduced and read by the plaintiffs themselves. It is a contract to export goods in contravention of the non-intercourse law of the United States. The plaintiffs, for W. and W. bring this action arising on the contract, and when the defendant offers to set-off his demands, they make the objection, that the contract is illegal as it respects him, though innocent and legal in regard to W. and W. The defendant, they contend, must pay them all that they claim under this contract; but they are not bound to pay the defendant any thing, because he is in delicto. W. and W., it is alleged, are British subjects, and not bound by the laws of the United

[*] Phillips's Law of Ev. 54. Phenix v. Assignees of Ingraham 5 Johns. Rep. 427. 2 Dallas, 50. 1 Mass. Rep. 239.

ALBANY,
January, 1817.

GRAVES
v.
DELAPLAINE.

* Crawford v.
Morrell, 8 Johns.
Rep. 256.

† Cowp. 441.

*States ;* but may avail themselves of those laws to deprive the defendant of his rights. Can such a principle be admitted for a moment ? If the plaintiffs avail themselves of the illegality of the contract, they must take it entire, for better for worse. If it is illegal in part, it is illegal throughout.*

No country regards the municipal or revenue laws of other countries; but when a plaintiff, whether a citizen or foreigner, comes to ask the court of a country to aid him in enforcing a right, arising out of a contract made in violation of the laws of that country, the court will refuse its aid. In *Holman* v. *Johnson*,† Lord *Mansfield* says, that it is not in favour of the parties that the objection is ever allowed ; but it is founded on the principle of public policy, that *ex dolo malo non oritur actio.* "No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If, from the plaintiff's own stating, or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of the positive law of the country, there the court say he has no right to be assisted." That was an action for the price of tea, sold and delivered in *Dunkirk,* in *France,* by the plaintiff, a native of that place, who knew that it was purchased for the purpose of being smuggled into *England,* but who had no concern whatever in the smuggling, but merely sold the tea to the defendant, as he would to any other person, in the ordinary course of business. The contract was complete by the delivery of the goods in *Dunkirk.* But Lord *Mansfield* says, " if the plaintiff had undertaken to send the tea into *England,* or had any concern in running it into *England,* he would have been an offender against the laws of that country." Now, unless the plaintiffs can show that there is a material distinction between running goods *into* a country against its laws, and running goods *out* of a country against its laws, the case put by Lord *Mansfield* is perfectly analogous to the present case, and the principle laid down by him is conclusive.

It is not pretended that this is not a clear case of a shipment of goods, in contravention of the laws of the *United States ;* it is immaterial whether *W.* & *W.* were citizens or foreigners; though they did not act against their allegiance, because they owed none, yet they acted against the laws of this country, and the contract is, therefore, void. The law looks to the contract, and avoids it, without regard to the political character or situation of the parties. In this respect, the parties are *in pari delicto.*

In *Howson* v. *Hancock*,* the court of K. B. said, that not a case could be found where money paid on an illegal contract, both being *participes criminis*, an action could be maintained to recover it back.

In *Monck* v. *Abel*,† which is analogous to the present case, the court of C. B. decided that a foreigner could not recover back a premium paid by him on a policy of insurance, where the voyage insured was in contravention of the laws of *Great Britain;* and in *Vandyck* v. *Hewett*,‡ Lord *Kenyon* said there was no distinguishing it from the common case of a smuggling transaction. Where the vendor assists the vendee in running the goods, to evade the laws of the country, they cannot recover back the goods themselves, or the value of them.

In *Hannay* v. *Eve*,§ the supreme court of the *United States* refused to enforce an agreement entered into in fraud of a law of the *United States*, though the agreement was made between *British* subjects, who were, at the time, enemies of this country, and the object of the agreement was a mere stratagem of war. The agreement sought to be enforced in that case was made between the master and crew of the vessel, and the plaintiffs, who were the owners of the vessel, by affirming the transaction, and calling on the defendant to account, were considered as parties to the fraud. In *Belding* v. *Pitkin*,‖ this court decided that an action would not lie on a contract to pay over half the proceeds of an illegal contract, though the money arising from it had been received by the defendant. This is a strong case to show the repugnance of courts of law to lend its aid to enforce claims arising out of an illegal contract. So, in *Hunt* v. *Knickerbacker*,** where the plaintiffs were managers of a lottery in the state of *Connecticut*, and having delivered to the defendant tickets to be sold in this state, brought an action of *assumpsit* to recover the value of the tickets unsold, on the ground that the defendant had made them his own by not returning them in time, according to his contract, the court held that the action could not be maintained, as the contract being to defeat the intent of the act of this state against private lotteries, was illegal ; and the present *Chief Justice*, who delivered the opinion of the court, adopts the principle laid down by Lord *Mansfield*, in *Holman* v. *Johnson*, and which was also recognised and applied in the case of *Belding* v. *Pitkin*, that a court of justice ought not, in any manner, to assist an illegal transaction. In-

ALBANY,
January, 1817.

GRAVES
v.
DELAPLAINE.

* 8 *Term Rep.* 575.

† 3 *Bos. & Pull.* 35.

‡ 1 *East*, 96.

§ 3 *Cranch's Rep.* 242.

‖ 2 *Caines' Rep.* 147.

** 5 *Johns Rep.* 327.

deed, the principle is so clearly just and reasonable, as to require no comment or illustration. Above all, the plaintiffs, who raise the objection of the illegality of the contract, to defeat the claims of the defendant, ought not to receive the aid of the court to enforce it, in support of their own demands.

The case of *The United States* v. *Wells*,* in which it was decided that a *return* cargo of a vessel, which had proceeded to a foreign port in contravention of the embargo law of the *United States*, was not liable to condemnation, is in favour of the defendant. In *Amory* v. *M'Gregor*,† though the point was raised as to the legality of a contract to convey goods from *Great Britain* to the *United States*, during the war between the two countries, yet that question was not considered by the court, who decided the cause on a point of pleading. In *Clark* v. *Shee*‡ the parties were not in *pari delicto*. In *Clugas* v. *Penaluna*,§ the plaintiff was assisting in the smuggling, by packing the brandy for that purpose, in *Guernsey*. So, in *Waymell* v. *Reed*,‖ the vendor, in *France*, by order of the buyer, having packed up the laces in a particular manner for smuggling them into *England*, and knowing at the time that they were to be smuggled, was not allowed to recover the price of them of the buyer in *England*. This case is in favour of the defendant, to repel the distinction raised between a citizen and a foreigner. The court held that they would not aid a native of another country in carrying into effect a contract made with an *English* subject to violate the laws of his country.

3. But supposing that the court will sustain this action, how does the account stand between the parties? The plaintiff has not proved his demand; and the defendant claims to set-off his demands against *W.* and *W.*, for freight, demurrage, and goods. The charter-party stipulates, that *W.* and *W.* are to credit the defendant with the freight; and the arrival and delivery of the goods, and amount of the freight were proved, and the demurrage, being a stipulated sum, has been proved. Where goods are delivered to a person to sell and remit the proceeds, and he neglects or refuses to render a statement of the sales and receipts, this is evidence to a jury under the count for money had and received to the use of the plaintiff.*

PLATT, J., delivered the opinion of the court. This is an action of *assumpsit* to recover a balance of account for moneys

* 3 Day's Rep. 296.

† 12 Johns. Rep. 287.

‡ Cowp. 147.

§ 4 Term Rep. 466.

‖ 5 Term Rep. 599.

** Schee v. Hassinger, 2 Binney's Rep. 325. S. P. Longchamp v. Kenny, Doug. 137.

paid by *Worrall* and *Williamson,* of *Liverpool,* for the use of the defendant.

The defendant, under the general issue and notice of set-off, claimed a balance of account due to him from *Worrall* and *Williamson.* The statement of the accounts by the respective parties, taken in connexion with the other evidence in the cause, show clearly that every item of the account was founded upon, and arose out of, a *charter-party* dated the 17th of *November,* 1809, and made at *New-York,* by the agent of *Worrall* and *Williamson* with the defendant; whereby it was stipulated that the defendant should furnish the ship *Columbia* to carry a cargo of cotton and other articles, for *Worrall* and *Williamson,* from *New-York* to *Fayal,* where the cargo was, by the terms of the charter-party, to be re-shipped on board a vessel to be provided by *Worrall* and *Williamson;* and the defendant was expressly authorized to draw on them for the freight and demurrage. The defendant also reserved the privilege of sending, by the same ship, (*Columbia,*) some goods of his own to be consigned to *Worrall* and *Williamson,* and to be sold by them for his account: and under that proviso in the charter-party, the defendant did ship on board the *Columbia,* on his own account, 200 tierces of flaxseed accordingly. The shipment and voyage expressly contemplated in that agreement, were, confessedly, in violation of a statute of the *United States.*

The charty-parter forms the basis of all the conflicting claims of these parties, and that being an illegal contract, neither party can sustain an action for the violation of it. The bills were drawn and paid (if at all) pursuant to the express stipulations of that original contract: and as between the parties to that illegal transaction, *melior est conditio possidentis.*

Although *Worrall* and *Williamson* owed no allegiance to the *United States,* yet, as they co-operated in the act of violating our municipal laws, they cannot have the aid of our courts to indemnify them for their losses in that speculation. This principle is sanctioned in the cases of *Holman* v. *Johnson,* (*Cowp.* 341.,) and *Waymell* v. *Reed,* (5 *Term Rep.* 596.) *Hunt* v. *Knickerbacker,* (5 *Johns. Rep.* 327.) *Hanway* v. *Eve,* (3 *Cranch,* 242.) For the same reason, *ex turpi causa,* the defendant cannot be aided in recovering the balance which he claims.

ALBANY,
January, 1817.

GRAVES
v.
DELAPLAINE.

This ground is decisive on the merits of the whole case, according to the evidence admitted at the trial : but the question, whether *Worall* and *Williamson* were competent witnesses for the plaintiffs, remains to be disposed of.

I think their depositions were properly excluded. Their discharge under the bankrupt law in *England,* with their release of the surplus, does not exonerate them from their debts contracted here. The proceedings against them as absent debtors, are presumptive evidence that they owe debts to creditors residing here : and, besides, this defendant claims to have a balance certified in his favour in this very suit upon a contract made by *Worrall* and *Williamson* in this state. The object of this suit is to create a fund for the payment of the debts of *Worrall* and *Williamson.* They have, therefore, a direct and certain interest in the event of this suit, because the sequestration of their property, as absent debtors, does not exonerate them from their debts ; and their release to the trustees of the surplus, cannot restore their competency ; *non constat* that there will be any surplus. If the plaintiffs recover in this suit, it will increase the fund for paymnent of debts, for which *Worrall* and *Williamson* are still personally liable in our courts ; and if the defendant prevails in his set-off, and recovers a balance against them, it will lessen that fund, and increase their personal responsibility. The defendant is, therefore, entitled to judgment.

Judgment for the defendant.